```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE

ENHANCED SECURITY RESEARCH, LLC,   :
                                   :
          Plaintiff,               :
                                   :
     v.                            :   C.A. No. 09-390-JJF
                                   :
CISCO SYSTEMS, INC.,               :
INTERNATIONAL BUSINESS MACHINES    :
CORPORATION, CHECK POINT SOFTWARE  :
TECHNOLOGIES, LTD., CHECK POINT    :
TECHNOLOGIES INC., SONICWALL,      :
INC., 3COM CORPORATION, NOKIA      :
CORPORATION, NOKIA, INC.,          :
FORTINET, INC., and SOURCEFIRE,    :
INC.                               :
          Defendants.              :
```

Martin R. Lueck, Esquire; Sara A. Poulos, Esquire; Cole M. Fauver, Esquire; Julia Dayton Klein, Esquire; Brenda L. Joly, Esquire; and Loren L. Hansen, Esquire of ROBINS, KAPLAN, MILLER & CIRESI L.L.P., Minneapolis, Minnesota.
Steven J. Balick, Esquire; John G. Day, Esquire; Tiffany Geyer London, Esquire; and Caroline Hong, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Plaintiff Enhanced Security Research, LLC.

Henry B. Gutman, Esquire; Noah M. Leibowitz, Esquire; and Victor Cole, Esquire of SIMPSON THACHER & BARTLETT LLP, New York, New York.
Jeffrey E. Ostrow, Esquire of SIMPSON THACHER & BARTLETT LLP, Palo Alto, California.
Jack B. Blumenfeld, Esquire, and Rodger D. Smith II, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendants Cisco Systems, Inc. and 3Com Corporation.

Charles L. Pannell, Esquire; Holmes J. Hawkins, III, Esquire; and Natasha H. Moffit, Esquire of KING & SPALDING LLP, Atlanta, Georgia.
Richard L. Horowitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware.

Attorneys for International Business Machines Corporation.

Edward J. DeFranco, Esquire of QUINN EMANUEL URQUHARRT OLIVER & HEDGES, LLP, New York, New York.
Jack B. Blumenfeld, Esquire, and Rodger D. Smith II, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendants Check Point Software Technologies Ltd. and Check Point Software Technologies Inc.

Christine S. Watson, Esquire; Colby B. Springer, Esquire; and Kenneth B. Wilson, Esquire of CARR 7 FERRELL, LLP, Palo Alto, California.
George Pazuniak, Esquire of WOMBLE CARLYLE SANDRIDGE & RICE PLLC, Wilmington, Delaware.

Attorneys for Defendant Sonic Wall, Inc.

Robert F. Perry, Esquire of KING & SPALDING LLP, New York, New York.
Steven T. Snyder, Esquire of KING & SPALDING LLP, Charlotte, North Carolina.
Jeffrey L. Moyer, Esquire, and Sarah R. Stafford, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.

Attorneys for Defendants Nokia Inc. and Nokia Corporation.

Stefani E. Shanberg, Esquire, and Robin L. Brewer, Esquire of WILSON SONSINI GOODRICH & ROSATI, Palo Alto, California.
Richard H. Morse, Esquire, and James L. Higgins, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendant Fortinet, Inc.

Peter J. Davis, Esquire; Alexander J. Hadjis, Esuire; and Elizabeth A. Richardson, Esquire of MORRISON & FOERSTER LLP, Washington, D.C.
Mary B. Graham, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendant Sourcefire Inc.

---

**MEMORANDUM OPINION**

June 25, 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are the following Motions: (1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Failure To Join An Indispensable Party (D.I. 54) filed by Defendants 3Com Corporation and Cisco Systems, Inc.; (2) Motion To Dismiss The Complaint For Lack Of Subject Matter Jurisdiction And Failure To Join An Indispensable Party (D.I. 58) filed by Defendant Fortinet, Inc.; (3) Motion To Dismiss And Joinder In Defendants Cisco Systems, Inc.'s and 3Com Corporation's Motion To Dismiss For Lack Of Subject Matter Jurisdiction And Failure To Join An Indispensable Party (D.I. 62) filed by Defendants Nokia Corporation and Nokia, Inc.; (4) Motion To Consolidate Cases (D.I. 70) filed by Plaintiff Enhanced Security Research, LLC; (5) Motion To Stay Pending Outcome Of Reexamination Proceedings (D.I. 100) filed by Defendant Fortinet, Inc.; and (6) Motion To Supplement The Record On Fortinet's Motion To Stay (D.I. 141) filed by Defendant Fortinet, Inc. For the reasons to be discussed, the Motions to Dismiss will be granted. In turn, Plaintiff's Motion To Consolidate and Defendants' Motions To Supplement and To Stay will be denied as moot.

I.  **Background**

On May 29, 2009, Plaintiff Enhanced Security Research, LLC ("Enhanced Security Research" or "Plaintiff") filed a patent infringement action against Defendants Cisco Systems, Inc. ("Cisco"), International Business Machines Corporation ("IBM"),

Check Point Software Technologies, Ltd., Check Point Software Technologies Inc. ("Check Point"), SonicWALL, Inc., 3Com Corporation ("3Com"), Nokia Corporation, Nokia, Inc. ("Nokia"), Fortinet, Inc., and Sourcefire, Inc. (collectively, "Defendants"). (D.I. 1.) On August 3, 2009, Plaintiffs Enhanced Security Research and Security Research Holdings LLC ("Security Research Holdings") filed another patent infringement action against Defendants.[1] Both actions allege that Defendants directly and contributorily infringed U.S. Patent Nos. 6,119,236 and 6,304,975 BI (collectively, the "patents-in-suit").

Peter Shipley ("Mr. Shipley") is the sole named inventor of the patents-in-suit. (D.I. 1, Exs. A-B.) In 1996, Mr. Shipley assigned rights to the patents-in-suit to Network Security Associates, a corporation wholly owned and operated by Mr. Shipley. (D.I. 71, at 3; Shipley Decl. at Ex. 1.) This assignment was apparently never recorded with the U.S. Patent and Trademark Office ("PTO") and was allegedly rescinded through subsequent conduct. (Id. at 3-4; Shipley Decl. ¶ 4.) In July 2007, Mr. Shipley assigned all rights, title and interest in the patents-in-suit to Enhanced Security Research. (D.I. 71, Ex. D; Shipley Decl. at Ex. 6.) On January 20, 2009, Enhanced Security Research entered into an agreement with Security Research

---

[1] Enhanced Sec. Research, et al. v. Cisco Sys., Inc., et al., 09-571-JJF.

Holdings entited "Purchase Agreement." (D.I. 55, Ex. A.) In May 2009, Network Security Associates and Mr. Shipley executed a confirmatory agreement assigning all rights, title and interest in the patents-in-suit to Enhanced Security Research. (D.I. 71, at 4; Shipley Decl. at Ex. 8.) The 2007 and 2009 assignments were recorded with the PTO. (D.I. 71, Exs. E-F.)

**II.  Parties' Contentions[2]**

By their Motions To Dismiss, Defendants contend that the Court lacks subject matter jurisdiction over this action because Enhanced Security Research does not have standing to bring suit. (D.I. 55, at 1.) According to Defendants, a party must possess all substantial rights in a patent in order to have standing to sue for patent infringement, and standing must exist at the time the action is filed. (Id. at 4.) Defendants contend that, under the terms of the Purchase Agreement, Enhanced Security Research did not maintain any substantial rights in the patents-in-suit. (Id. at 5.) Further, Defendants contend that the Purchase Agreement divorced nominal legal title to the patents-in-suit (which remained with Enhanced Security Research) from the exclusionary rights to those patents (which were conveyed to Security Research Holdings). (Id. at 6.)

---

[2] In support of their respective Motions To Dismiss, Defendants Fortinet and Nokia rely on 3Com and Cisco's Opening Brief. (D.I. 58, 62.) Defendants Sourcefire, IBM, and Check Point have joined in 3Com and Cisco's Motion To Dismiss (D.I. 59, 63, 66.)

3

Plaintiff responds that it does have standing to bring this patent infringement action. (D.I. 71, at 1.) According to Plaintiff, only the patentee, which includes the patentee to whom the patent was issued and successors in interest, can bring a patent infringement action. (Id. at 7.) Further, Plaintiff contends that legal title to a patent can only be transferred through assignment. (Id.) Plaintiff maintains that it was the assignee of record for both patents-in-suit when this action was filed. (Id. at 10.) Moreover, Plaintiff argues that the Purchase Agreement did not transfer all substantial rights to Security Research Holdings, and was not an assignment. (Id. at 10-11.) Rather, under the Purchase Agreement, Enhanced Security Research retained ownership of the patents-in-suit and the right to enforce them, while certain managerial responsibilities were delegated to Security Research Holdings. (Id. at 12-14.) Plaintiff also contends that the Purchase Agreement was not an assignment because Security Research Holdings lacks the ability to transfer its rights under the Agreement. (Id. at 14.)

### III. Legal Standard

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial challenge or a factual challenge to the Court's subject matter jurisdiction.

4

Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000)(citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). If the motion presents a factual attack, the Court may consider evidence outside the pleadings, id., including affidavits, depositions, and testimony, to resolve factual issues bearing on jurisdiction. Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997). Moreover, in reviewing a factual challenge to the court's subject matter jurisdiction, the presumption of truthfulness does not attach to the allegations of the complaint. Mortensen, 549 F.2d at 891. If the motion presents a facial attack, the Court may only consider the allegations of the complaint, and documents referenced therein, in the light most favorable to the plaintiff. Gould Elecs., 220 F.3d at 176. The present Motions To Dismiss will be treated as factual attacks.

**IV. Discussion**

As in all federal actions, a plaintiff must have standing to sue before a patent infringement claim can be brought. Sicom Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975-76 (Fed. Cir. 2005). To establish standing in accordance with Article III of the Constitution, the party bringing the action must demonstrate (1) an injury in fact (an invasion of a legally protected interest which is concrete and particularized and actual or imminent); (2) a causal connection between the

defendant's action and the injury (that the injury is fairly traceable to the defendant's alleged unlawful conduct); and (3) redressability (that the injury is likely to be redressed by the relief requested). Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In the context of patent infringement actions specifically, standing is derived from the Patent Act, which permits a "patentee" to bring a "civil action for infringement of his patent." 35 U.S.C. § 281. A "patentee" includes the patentee to whom a patent is issued and the "successors in title to the patentee." Id. § 100(d). The Patent Act further creates the legal interest in a patent: the right to exclude others from making, using, selling, or offering to sell the patented invention. Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007)(citing 35 U.S.C. §§ 154, 271). Thus, the party holding the exclusionary rights to a patent suffers the legal injury in fact and has standing to sue. Id.

In turn, the Federal Circuit has identified three general categories of plaintiffs when analyzing the constitutional standing issue in patent infringement actions: (1) those that can sue in their own name; (2) those that can sue as long as the patent owner is also joined in the suit; and (3) those that cannot even participate as a party to an infringement suit. Id. at 1339-41. Patentees and assignees who hold "all substantial rights" to the patent fall into the first category of plaintiffs

6

and have standing to bring a suit for infringement in their own name alone. Id. at 1339-40. The second category of plaintiffs includes parties who hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patents. Id. at 1340. The third category of plaintiffs includes those that hold less than all substantial rights to the patents and lack exclusionary rights. Id. at 1340-41. The burden of establishing standing rests on the party bringing suit. Sicom, 427 F.3d at 976.

The issue before the Court is whether Enhanced Security Research falls into the first category of plaintiffs described and has standing to bring suit on its own, without Security Research Holdings. In order to answer this question, the Court will consider what rights Enhanced Security Research retained and what rights it transferred to Security Research Holdings under the terms of the Purchase Agreement, as well as the intention of the parties as demonstrated by the Purchase Agreement as a whole.[3] See Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1378 (Fed. Cir. 2000)("To determine whether a license agreement has conveyed all substantial rights in a patent, and is thus tantamount to an assignment, we must ascertain the intention of the parties and examine the substance of what was granted. In

---

[3] It does not appear that Defendants challenge the validity of the 2007 assignment of patent rights from Mr. Shipley to Enhanced Security Research.

7

doing so, it is helpful to look at what rights were retained by the grantor.")(internal citations omitted).

The Federal Circuit has addressed the issue of standing to sue for patent infringement numerous times in recent years. See e.g., Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187 (Fed. Cir. 2007); Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336 (Fed. Cir. 2006); Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333 (Fed. Cir. 2001); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000); Abbott Labs. v. Diamedix Corp., 47 F.3d 1128 (Fed. Cir. 1995); Vaupel Textilmascginen KG v. Meccanica Euro Italia SPA, 944 F.2d 870 (Fed. Cir. 1991). One of the most important rights in the standing analysis is the exclusive right to sue for patent infringement because this is the means by which a party exercises the right to exclude others from making, using, and selling the claimed invention. Sicom, 427 F.3d at 979 (citing Vaupel, 944 F.2d at 875). Additionally, the Federal Circuit has looked to whether the grantor retains the right to make and use the patented product, Abbott Labs., 47 F.3d at 1132, as well as the ability to freely grant sublicenses to other parties. See Prima Tek II, 222 F.3d at 1380; Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir. 1998). Whether a party may settle litigation, assign its interests in the patents, and enter into contracts without reservation are also relevant considerations.

See <u>Sicom</u>, 427 F.3d at 979-80.

The Court concludes that the Purchase Agreement provided Security Research Holdings with all substantial rights to the patents-in-suit such that Enhanced Security Research lacks constitutional standing to bring this action on its own. Under the terms of the Purchase Agreement, Enhanced Security Research retained title to the patents-in-suit and possessed the "rights to use, exploit, enforce, [the patents-in-suit]." (D.I. 55, Ex. A § 3.12(a),(c).) Despite this language, the Purchase Agreement is clear that control over the exclusionary rights was given to Security Research Holdings. Section 2.3(c) provides that Security Research Holdings "shall have the *exclusive right to: initiate*, maintain, manage, *resolve*, conclude and *settle* all arrangements and activities in connection with *any and all licensing or litigation or enforcement efforts* and/or Proceedings . . . relating to any of [Enhanced Security Research]'s rights in and to any of the Patents." (<u>Id.</u> § 2.3(c) (emphasis added).) Enhanced Security Research is prohibited from making any decision with respect to the assertion of its patent rights, the conduct of litigation relating to the patents-in-suit, or the settlement or resolution of such litigation without the prior written consent of Security Research Holdings. (<u>Id.</u> § 5.4(r), (s).) Enhanced Security Research is also prohibited from contacting any potential infringers without the prior consent of Security

9

Research Holdings. (Id. § 3.18(c).) Moreover, Enhanced Security Research "shall take all actions to give effect to [Security Research Holding]'s decisions." (Id. § 2.3(c).) Further, Enhanced Security Research relinquished its ability to freely assign, transfer, or license its rights in the patents-in-suit without the prior written consent of Security Research Holdings. (Id. § 5.4(k).)

To the extent Enhanced Security Research retains certain interests and obligations with regard to the patents-in-suit, they are circumscribed by the Purchase Agreement. While Enhanced Security Research may be obligated for the legal fees and expenses related to enforcing the patents-in-suit (id. § 2.3(a),(b)), Security Research Holdings is the party with the authority to enter into legal fee arrangements and to make all decisions with respect to engaging counsel (id. § 2.3(c)). In addition, Enhanced Security Research may receive consideration in connection with enforcement actions and licensing and litigation efforts for the patents-in-suit, but Enhanced Security Research must give notice of such receipts to Security Research Holdings and must compute payments owed to Security Research Holdings. (Id. §§ 5.6, 5.16, 5.17.)

Although Enhanced Security Research appears to have retained legal title to the patents-in-suit, as well as the ability to exploit the patents-in-suit, the Court concludes that

10

the Purchase Agreement nevertheless transferred "all substantial rights" to Security Research Holdings.  Under the Purchase Agreement, Enhanced Security Research lacks authority to make decisions concerning licensing and assignments, whether to initiate enforcement proceedings and/or settlement discussions, how to conduct litigation, and the approval of any settlements.  Because Enhanced Security Research lacked the requisite legal interest in the patents-in-suit at the time it brought this action, it has not suffered any cognizable injury and does not have Article III standing.  Joinder of Security Research Holdings as a party to the action cannot cure this defect.  Cf. Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1018-19 (Fed. Cir. 2001)(per curiam)(permitting plaintiff who suffered a cognizable injury but had less than all substantial rights in the patent to join the patentee as plaintiff in order to cure the prudential standing defect).

**V.   Conclusion**

For the reasons discussed, Defendants' Motions To Dismiss will be granted.  Plaintiff's Motion To Consolidate and Defendants' Motions To Supplement and To Stay will be denied as moot.

An appropriate Order will be entered.

11